**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| In re: § | |
| § | CASE NO. 18-50102-cag |
| **STEVEN JEFFREY CYR** § | |
| § | CHAPTER 7 |
| Debtor. § | |

**CLOSING ARGUMENT IN SUPPORT OF THE**
**FIRST AMENDED OBJECTIONS OF KEY EQUIPMENT FINANCE**
**TO DEBTOR'S CLAIMS OF EXEMPTIONS [ECF 183]**

**TO THE HONORABLE CRAIG A. GARGOTTA,**
**UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, Key Equipment Finance, a division of KeyBank National Association ("KEY") and files this Closing Argument in Support of its First Amended Objections to Debtor's Claims of Exemptions [ECF 183] and would respectfully show this Court as follows:

**I.**
**SUMMARY OF ARGUMENT AND RELIEF REQUESTED**

1.01   As evidenced by the testimony of Steven J. Cyr ("CYR") and LeAnn Cyr ("LAC") together with the various retained professionals[1], CYR, with the assistance and guidance of LAC has engaged in a calculated scheme to preclude his creditors from realizing payment of their bona fide claims. The scheme includes:

   a.   the intentional pre-petition transfer of assets;

   b.   the intentional non-disclosure of assets, including the intentional exclusion of CYR's community property interest in the sole control community property of LAC;

   c.   understating and undervaluing the personal property scheduled; and

---

[1]   Including Anthony Vitul-lo, Norbert Gonzalez and Lillian Putman.

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its*
*Amended Objections to Debtor's Claims of Exemption*   Page **1** of **17**

    d.    the conscious divestment by CYR of his sole control community property in the form of diverting all of the income generated through the delivery of medical services[2] to the Bergerud Heritage Trust ("BHT").

1.02    In the furtherance of the scheme, CYR and LAC used the BHT as the vehicle to disguise the purchase of a new multi-million dollar home in Spring, Texas some twenty (20) days prior to CYR's Petition Date[3] using the revenues generated by CYR from the practice of medicine - all of which were diverted from the control of CYR and into SA Spine, LLC, an entity allegedly owned and controlled by the BHT[4]. The purchase of the Spring home was made in furtherance of the combined decisions of CYR and LAC to relocate from San Antonio to Houston.

1.03    CYR attempted to effectuate the plan to avoid the payment of his creditors by filing his Chapter 7 proceeding claiming the $100,000 head of household exemption[5].

1.04    By its objection, KEY requests that the Court:

a.    Deny the homestead exemption claimed under §41.001 *et seq*. of the Texas Property Code as to 15 Esquire, San Antonio, Texas based upon the manifested intent to abandon the homestead character of 15 Esquire prior to the Petition Date.

b.    Limit the personal property exemption of CYR in the items identified in Schedule C of the Schedule C, Part 2 of Amended Schedules filed as ECF 195 (the "CYR Schedules")[6] to the $50,000 permitted under §42.001(a)(2)

---

[2] Through a scheme which violates the Texas Medical Practices Act (Chapter 151, et seq. Texas Occupations Code).
[3] January 20, 2018.
[4] Through a scheme which violates the Texas Medical Practices Act (Chapter 151, et seq. Texas Occupations Code); Exhibit 125; but see Exhibit 124
[5] §42.001(a)(1) Texas Property Code.
[6] On February 7 and again of February 12, 2019, CYR filed a second Amended Schedules and Statement of Financial Affairs as ECF 185 and 195, respectively. This filing on the eve of the hearing on the objections to exemptions removed the Debtor's claimed exemptions to the office equipment and exercise equipment owned by OSI. KEY reserves the right to re-assert the previously filed objection to the extent that CYR attempts further amendments to the Schedule C.

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*    Page **2** of **17**

of the Texas Property Code because CYR, though married, does not qualify as the "head of household".

c. Deny the exemption claimed by CYR in the value of each item identified in the CYR Schedules above the amount listed in each such category by CYR based upon the uncontroverted testimony of Lillian Putman that the valuation was based upon a "forced liquidation value" and not a "fair market value".

d. Deny each claimed exemption of personal property outside of the delineated categories of §42.002.

e. Deny any subsequently claimed exemption for any presently unscheduled joint control community property.

f. Deny any subsequently claimed exemption for any presently unscheduled sole control community property.

g. Deny any subsequently claimed exemption for any presently unscheduled separate property of CYR.

h. Deny any subsequently claimed exemption to all presently unscheduled community property interests of CYR in the sole control community property of LAC.

i. Deny the claim of exemption by CYR in the Orthopaedic & Spine Institute, LLC ("OSI") 401(k) distribution.

j. Deny the claim of exemption of CYR in the ILIT Life Insurance Trust and, as applicable, the claim of exemption in the Lincoln Benefit Life Insurance Policies owned by the ILIT.

## II.
## ARGUMENT AND AUTHORITIES

A. **Burden of Proof as to Objection to Exemptions**

2.01 The party objecting to a debtor's claim of exemptions, including a

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its*
*Amended Objections to Debtor's Claims of Exemption*                    Page **3** of **17**

homestead exemption, is required to prove by a preponderance of the evidence that the claimed exemption is invalid. See, *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *Chilton v. Moser*, 674 F.3d 486, 488 (5th Cir. 2012); *Cipolla v. Roberts (In re Cipolla)*, 476 Fed. Appx. 301 (5th Cir. 2012); *Pequeno v. Schmidt (In re Pequeno)*, 126 Fed. Appx. 158 (5th Cir. 2005); *In re Bounds*, 491 B.R. 440, 449 (Bankr. W.D. Tex. 2013), and *In re Presto*, 376 B.R. 554, 563 (Bankr. S.D. Tex. 2007).

2.02 Further, the creditor asserting that a claimed homestead was abandoned bears the burden of proving, by a preponderance of the evidence, that the debtor possessed the actual intent to abandon the homestead. *In re Finkel*, 151 B.R. 779, 783 (Bankr. W.D. Tex. 1993, citing *Federal Petroleum Co. v. Pittman*, 65 S.W.2d 359, 361 (Tex.Civ.App. -- Eastland 1933, writ ref'd); *White v. Yates*, 85 S.W. 46, 48 (Tex.Civ.App. 1905, no writ); *Evans v. Pace*, 21 Tex. Civ. App. 368, 51 S.W. 1094, 1095 (Tex.Civ.App. 1899, no writ); and *Alexander v. Lovitt*, 56 S.W. 685, 686 (Tex.Civ.App. 1900). Intent is determined from the totality of the circumstances. *Id.*

2.03 Intent must be accompanied by overt acts of preparation consistent with intent. *Bovey v. Coffey, 2012 Tex. App. LEXIS 3247, *6, 2012 WL 1448530, citing McKee v. Wilson*, 174 S.W.3d 842, 844 (Tex. App.—Waco 2005, no pet.). "Where no homestead dedicated by actual occupancy exists, effect may be given to ownership, intention[,] and preparation to use for a home[.]" *Id.*

2.04 The Texas Supreme Court has said that the homestead exemption confers on a debtor "a home as an asylum--a refuge which cannot be invaded nor its tranquility or serenity disturbed. . . . [It was designed] to cherish and support in the bosoms of individuals, those feelings of sublime independence which are so essential to the maintenance of free institutions." *Odes Ho Kim v. Cong Ann Kim (In re Odes Ho Kim)*,

405 B.R. 179, 184-185 (Bankr. N.D. Tex. 2009) (*citing, Franklin v. Coffee*, 18 Tex. 413, 415-16 (1857)). The homestead exemption continues so as to "protect citizens and their families from the miseries and dangers of destitution." *Id*. It is also recognized that the court "must give a liberal construction to the constitutional and statutory provisions of Texas that protect homestead exemptions. . . [and] must uphold and enforce the Texas homestead laws <u>even though in so doing we might unwittingly 'assist a dishonest debtor in wrongfully defeating his creditor.</u>'" *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992) (*quoting Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673, 678 (1931) (emphasis added) (additional citations omitted). However, as further recognized by the Court in *Kim*, and highly relevant to the case at bar, "[a] state is without power to make or enforce any law governing bankruptcies that . . . conflicts with the national bankruptcy laws. . . [a]nd "[t]he power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. CONSTITUTION, ART. 1, s 8, cl. 4." *Kim* at 185 (*citing International Shoe Co. v. Pinkus*, 278 U.S. 261, 263-64, 49 S.Ct. 108, 109-10, 73 L.Ed. 318 (1929)).

**A.** **<u>15 Esquire was Abandoned as the Homestead</u>**

2.05 CYR has identified 15 Esquire, San Antonio, Texas ("15 Esquire") as his residential homestead.[7] Of course CYR testified that he intends to remain at 15 Esquire and claim that property as his homestead[8]; to do otherwise would defeat his contrived scheme to harbor all of his assets in a self-settled trust. The uncontroverted evidence reveals a systematic and intentional design by CYR and LAC to move from one palatial estate to another, relocate the children to prestigious private schools in the Houston area,

---

[7] Exhibit 96, ECF 195
[8] Testimony of CYR, Transcript Day 1, Page 62-63, Lines 21—2

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*    Page **5** of **17**

and start afresh as soon as payment of the bona fide claims of CYR's creditors, including KEY[9], could be disposed of through the bankruptcy process.

2.06 The intention of CYR and LAC to move to Houston is confirmed in communications with third parties, including friends[10] and business acquaintances[11]. It is manifested through the shopping for and ultimate purchase of 30 Post Shadow[12]. The intention of CYR and LAC to abandon 15 Esquire is unquestionably evidenced by the preparation and posting on the web by Adam Rivera of the 15 Esquire Video Tour[13] which was reviewed and approved by LAC[14] coupled with the preparation and approval[15] of Le Grande Maison Brochure[16], and finally through the submission of applications for admissions to at least three prestigious Houston area private schools for the school age children of CYR and LAC[17] and the actual enrollment and attendance of those children for the 2018-2019 school year[18]. Though much was made by counsel for LAC regarding the absence of any commentary by CYR in connection with Adam Rivera's video and brochure offering 15 Esquire and 8 Villars[19] for sale together; it is the very silence by CYR that is deafening. CYR never once instructed Adam Rivera to stand down[20] in his marketing project; and LAC continued to communicate with Adam Rivera even going so far as to promise him a brochure release date as soon as "the lawyers approved it".[21]

---

[9] See KEY Proof of Claim, Claim No. 13; Exhibit 96
[10] See Exhibit 88
[11] See Exhibit 78, 84, 119
[12] See Exhibits 13, 56, 57, 58, 60, 66, 68, 80, 93, 118, 119
[13] See Exhibit 15
[14] See Exhibit 70
[15] See Exhibit 70
[16] See Exhibit 14
[17] See Exhibit 79
[18] LAC Testimony, Transcript Day 3, Page 215-219, Lines 13—15
[19] The adjacent property connected by a single outdoor living and pool area
[20] CYR Testimony, Transcript Day 1, Pages 200—210, Lines 7—22
[21] LAC Testimony, Transcript Day 3, Page 175—180, Lines 15—6

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its*
*Amended Objections to Debtor's Claims of Exemption*　　　　Page **6** of **17**

2.07   The overt acts of CYR and LAC in connection with the transition of the SASpine operations to Houston[22], the purchase of a 14,000 square foot estate in Spring, the enrollment of their children in Houston area schools, the actual moving of the children[23], their nanny and LAC to Houston[24], the preparation of extensive marketing materials for the sale of 15 Esquire are individually and collectively consistent with an intent to abandon 15 Esquire as the residential homestead irrespective of the self-serving testimony of CYR.  Accordingly, the homestead exemption claimed under §41.001 et seq. of the Texas Property Code as to 15 Esquire, San Antonio, Texas should be denied.

**B.    The Personal Property Exemptions Should be Limited to $50,000 and Should be Capped at the Putman Appraisal Values**

1.   The limitation of CYR's Exemption under §42.001(a)(2) to $50,000 is appropriate.

2.08   Texas recognizes that there is only one head of any given household and has recognized that the following presumptions and circumstances control the liberal provisions of the Texas exemption statutes: (1) the family relation is one of status, (2) the head of the family must be legally or morally obligated to support at least one other family member, and (3) there must be a corresponding dependence on the supporting member. *See, e.g. In re Hill,* 972 F.2d 116, 120 (5th Cir. 1992); *In re Finkel*, 151 B.R. 779, 785 (Bankr. W.D. Tex. 1993) *citing Roco v. Green,* 50 Tex. 483 (1878); *Henry S. Miller v. Shoaf*, 434 S.W.2d 243, 244 (Tex. Civ. App. 1968, writ ref'd n.r.e.); and *In re Fink*, Case No. 07-36827, 2009 WL3015340 (Bankr. S.D. Tex. 2009) (unreported).  In determining the nature of the relationship that gives rise to the "head of household" status, the Texas

---

[22]   LAC Testimony, Transcript Day 3, Page 220—222 , Lines 19—25
[23]   LAC Testimony, Transcript Day 3, Page 149—166 , Line 13—10, Transcript Day 3, Page 213-219, Lines 20—15
[24]   LAC Testimony, Transcript Day 3, Page 149--222, Line 13—25

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*                                       Page **7** of **17**

courts have provided the following limited guidance:

    a.     a widow was afforded "head of household" status and entitled to claim the benefits of such an exemption where she had voluntarily assumed the care of the children of a stepdaughter and the children were dependent upon her for support and maintenance. *Wolfe v. Buckley*, 52 Tex. 641, 649, (Tex. 1880); and

    b.     a single woman who voluntarily assumed responsibility for the rearing, training, and nurturing of certain nephews and nieces, and who contributed to their support and maintenance, was afforded "head of household" status. *American National Bank v. Cruger*, 71 S.W. 784, 789 (Tex. Civ. App. 1902).

    2.09     The debtor in *Finkel* failed to achieve the head of household status because, among other reasons, she did not, in fact, provide financial support to any of the members of the household. *Finkel*, 151 B.R. at 785. CYR acknowledges on his Schedule I that he has no income[25]. CYR testified that he has received no income of any kind since at least April 2017[26]. All of the financial support for CYR, LAC and their children are provided by the BHT, including the payment of all personal living expenses[27]. Further, since at least November 2017, the manifested intent of CYR and LAC has been to have the children of CYR and LAC attend school in Houston[28] and, after December 27, 2017, to live in Houston[29], ostensibly with LAC and her nanny. Like the debtor in *Finkel,* CYR has not provided financial support for anyone, including himself.

    2.10     As a result of the calculated scheme of CYR and LAC to intentionally divest CYR of any income, to divert all of the revenue generated through the provision of medical

---

[25] See ECF 1
[26] See Day 1 Transcript, Page 134, Lines 18-20
[27] See Day 3 Transcript, Page 211-213, Lines 3—2; Page 215, Lines 4-12, also See Day 1 Transcript, Pages 134-135, Lines 21—5, Page 141, Lines 14-18
[28] See Exhibits 79
[29] See Exhibits 13, 56, 57, 58, 60, 66, 68, 78, 79, 80, 84, 88, 93, 119, 118, and 119

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*     Page **8** of **17**

services by CYR to an entity in violation of the Medical Practice Act for the purpose of avoiding the payment of the bona fide debts of CYR, and to move the family unit, along with LAC to Houston, the personal property exemption available to CYR should be limited to the $50,000 cap afforded under §42.001(a)(2).

    2.    <u>Limiting CYR's Exemption to the Putman Appraised Value[30] is Appropriate</u>

2.11    Unlike many terms referenced and utilized in the Bankruptcy Code, the valuation of the personal property that a debtor must utilize in connection with his claim of exemptions is the "*fair market value as of the date of the petition*". See 11 U.S.C. §522(a)(2). It is also well established that once the debtor elects to ascribe a specific value to the assets exempted on his Schedule C, the debtor's exemption in that asset is limited to the value so stated. *Schwab v. Reilly*, 560 U.S. 770, 130 S. Ct. 2652, 61-62 (2010).

2.12    CYR testified that though he did not participate in the appraisal process performed by Lillian Putman, he intended to adopt her appraisal as the value ascribed to the personal property which he exempted in his Schedule C[31]. CYR's Schedule C[32] reflects the values as determined by Lillian Putman, which values are based upon a forced liquidation value[33].

2.13    In keeping with Judge Scalia's instructions in *Schwab v. Reilly* and the dictates of Section 522, the value of the personal property assets claimed by CYR as

---

[30]    Exhibit 35
[31]    See Day 1 Transcript, Page 62, Lines 15- 20, Page 69, Lines 4-25, and Pages 70-72, and Page 73, Lines 1-24
[32]    Exhibit 96
[33]    See, Exhibit 35, See also Testimony of Lillian Putman Day 4 Day 4 Transcript, Page 106-107, Lines 22—15, Page 108-109, Line 23—2, Pages 113—115, Line 3—25, Page 128, Lines 2-3, Page 126, Lines 1-6, confirming the valuation method and confirming that she did not and was at that time unable to provide the Court with a fair market value valuation.

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*    Page **9** of **17**

exempt should be capped at the liquidation value adopted by CYR from the Lillian Putman Appraisal. Upon the re-appraisal of the property by the Trustee, all of the value in excess of that set forth in the Putman Appraisal should be property of the Estate.

3. <u>The Purported Exemptions beyond §42.002 should be denied.</u>

2.14 In classic Clark parlance, Judge Leif Clark, in *In re Mitchell,* analyzed the framework under which a debtor is permitted to "select" personal property for exemption under §42.002, opining:

> "Section 42.002 of the Property Code sets out what Texas finds to be the "approved list" of items which Texans should be allowed to retain, no matter how much they owe creditors. Some of these items assure the survival of the individual or the family in some station above abject poverty. (Internal references omitted). Thus, we will not let creditors take away the debtor's means of transportation in this, the largest state among the lower forty-eight. Nor will we allow the farmer debtor to be deprived of the means with which to restart his herd (a bull and five cows, with calves). The debtor will be permitted to keep food, clothing, furniture, and the means of livelihood (to the extent directly related and essential to the profession or trade). In addition, Texas protects the dignity of its citizens, and seems to uphold a certain ethos in its exemption laws. A Texan should be allowed to keep two firearms, for example. Athletic and sporting equipment is on the list of protected items (musical instruments are not). Among the specific means of travel sanctioned by Texas' exemption law are both passenger cars and light trucks (this would include pickup trucks), if not used for the production of income. If used for income production, a Texan can also keep two horses (with saddle and bridle for each), or a pickup truck, or a camper truck.
>
> In short, Texans cannot simply keep $30,000.00 worth of anything they want. Instead, they must pick items off an approved list of items which, according to the legislature, are the sort of things sufficiently important for a Texas debtor to keep regardless of the claims of creditors. (Internal references omitted.) Once debtors have "gone shopping" from this approved list and picked out what they want to keep, however, they must "go to the checkout line," as it were, to see how

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its*
*Amended Objections to Debtor's Claims of Exemption*     Page **10** of **17**

much can actually be "purchased" out of the "budget" allowed by the Texas Legislature in section 42.001(a) of the Property Code. This second step in the process balances out the competing concerns of assuring a debtor a fresh start and assuring creditors a fair recovery on their legitimate claims. (Internal citations and comments omitted). Letting the debtor have everything off the approved list without limitation offends the sensibilities of the common man (and woman) whom the legislature represents. The cap prevents abuse and overreaching by unscrupulous debtors who would borrow with impunity, then "thumb their noses" at their creditors. (Internal references omitted)."

*In re Mitchell*, 103 B.R. 819, 823-24 (Bankr. W.D. Tex. 1989).

2.15 Employing the shopping analogy proposed by Judge Clark, CYR should not be permitted to sail through the exemption checkout lane with more than $12,500[34] in jewelry and should not be permitted to exempt any of the "Replica Figurines," "Dallas Cowboys" or "Spurs" memorabilia as the toys of privileged boys were never considered by the Texas legislature to be necessary for the assurance of "the survival of the individual or the family in some station above abject poverty." Accordingly, the exemptions so claimed by CYR should be denied.

## C. The 401K Distribution is Property of the Estate

2.16 In determining whether CYR is entitled to exempt the proceeds from the voluntarily terminated 401(k) plan in place with his wholly owned entity, OSI, this Court must reach beyond the four corners of the Fifth Circuit's opinion in *Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287 (5th Cir. 2017) and look to Article 29 for guidance on the event and consequences of termination of a 401k plan. Clearly the Snapshot Rule, as adopted in the Fifth Circuit, controls here. *See e.g. Hawk, id, Viegelahn v. Frost (In re Frost)*, 744

---

[34] Utilizing the maximum personal property exemption of $50,000

F.3d 384 (5th Cir. 2014); *Zibman v. Tow (In re Zibman)*, 268 F.3d 298 (5th Cir. 2001); *In re Sanodoval*, 103 F.3d 20 (5th Cir. 1997). The precise conditions of the OSI 401k Profit Sharing Plan (the "OSI Plan") on the Petition Date are determined by the uncontroverted evidence as follows:

    a.    The OSI Plan is a single-employer plan[35].

    b.    Effective November 29, 2017, in his capacity as the Plan Trustee of the OSI Plan, CYR issued the request for a complete termination of the OSI Plan ***effective December 31, 2017***[36].

    c.    Effective ***January 17, 2018***, CYR, as **plan participant and** as **Plan Trustee**, requested the distribution of the net balance of his interest in the OSI Plan and elected to waive the 30 day waiting period which permitted the immediate processing of the distribution request[37].

    d.    CYR, in the same request, directed that the applicable US income tax be withheld from his distribution[38].

2.18    Pursuant to 29 USC §1348(a), the termination date of a single-employer plan terminated in a standard termination is "the termination date proposed in the notice provided." There is no evidence to indicate that the OSI Plan termination was anything other than a "standard plan termination". In fact, the evidence would indicate that the OSI Plan was a "standard plan termination" as the OSI Plan was terminated because OSI was

---

[35] Exhibits 27, 30
[36] Exhibit 8
[37] Exhibit 11
[38] Id.

no longer an operating entity and all of the employees of OSI were transferred to SASpine which entity was in the process of establishing its own new 401k plan[39].

2.19 For purposes of determining the status of CYR's 401k distribution, the operative issue should be the date of the termination of the plan, an event over which CYR, as Plan Trustee, had exclusive control, and the date on which CYR sought the immediate distribution of the investment. The evidence establishes that as of the Petition Date (January 20, 2018), the OSI Plan was terminated (having occurred on December 31, 2017) and CYR, as a participant, had requested an immediate distribution of his vested interest in the OSI Plan (having occurred on January 17, 2018). Finally, it is further undisputed that CYR neither intended to nor actually reinvested his 401k distribution[40] within the sixty-day reinvestment period.

2.20 Employing the Snapshot Rule and *Hawk* to CYR's 401k distribution, as of the Petition Date CYR's interest in the OSI Plan no longer had the characteristics of a 401k and were effectively "distributed" *subject only* to the applicable sixty-day reinvestment, an opportunity which CYR declined seize. *See also, In re Arlin* Case No. 16-41550, 2019 WL328724 __ B.R. __ (Bankr. N.D. Tex. 2019). Accordingly, CYR's claim of exemption with regard to the 401k distribution out of the terminated OSI Plan should be denied.

E. **CYR is Not Entitled to an Exemption in the Insurance Policies Owned by the ILIT**

2.21 The Steven Jeffrey Cyr Life Insurance Trust (the "ILIT") purports to be an irrevocable life insurance trust[41]. The ILIT confirms that the two Lincoln Benefit Life

---

[39] Exhibit 10
[40] CYR Testimony, Transcript Day 2, Page 8-12, Lines 11—13
[41] Exhibit 7

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*                    Page **13** of **17**

Insurance Policies[42] were irrevocably conveyed to the ILIT. Accordingly, the Lincoln Benefit Life Insurance Policies cannot constitute property of the estate under 11 U.S.C. §541 as that provision only pulls into the debtor's estate the "legal or equitable interests of the debtor in property as of the commencement of the case."

2.22 Because the ILIT held all of the interest in the Lincoln Benefit Life Insurance Policies as of the date of the Petition Date, CYR cannot **exempt from** the estate that which he does not own. Accordingly, the Court should disallow any claim of exemption in insurance policies owned by the Steven Jeffrey Cyr Life Insurance Trust, including the Lincoln Benefit Life Insurance Policies.

### F. CYR should be precluded from any further amendment of Schedule C

2.23 As a general rule, a debtor may amend his exemptions as a matter of course under Federal Rule of Bankruptcy Procedure 1009(a). There are, however, two exceptions to this rule: (1) bad faith on the part of the debtor, and (2) prejudice to the creditors. *Ladd v. Ries (In re Ladd),* 450 F.3d 751, 755 (8th Cir. 2006) (citing *Kaelin v. Bassett (In re Kaelin),* 308 F.3d 885, 889 (8th Cir. 2002)); *Bauer v. Iannacone (In re Bauer),* 298 B.R. 353, 356 (B.A.P. 8th Cir. 2003). The question of whether a debtor has acted in bad faith is determined by examining the totality of the circumstances, *Kaelin,* 308 F.3d at 889.

2.24 Section 521(a)(1), requires a debtor to file a true and accurate schedule of assets and liabilities. Bankruptcy schedules must be verified by debtors under penalty of perjury. *Cepelak v. Sears (In re Sears),* 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). The debtor's duty of disclosure requires the debtor to honestly and accurately disclose assets,

---

[42] Exhibits 5 and 6

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its*
*Amended Objections to Debtor's Claims of Exemption*  Page **14** of **17**

cooperate with the trustee, and amend the schedules *as soon as practicable* when the debtor knows of any inaccuracies or omissions. *Bauer,* 298 B.R. at 357; *see also* 11 U.S.C. § 521.

2.25 Where a debtor has attempted to hide an asset, the debtor has acted in bad faith. *Kaelin,* 308 F.3d at 890. The Court may infer from the circumstances whether a debtor has intentionally concealed assets, "*including nondisclosures that were the result of a reckless disregard for the truth of the information provided*." *In re Evinger*, 354 B.R. 850, 854, (Bankr. W.D. Ark. 2006) (emphasis added); *In re Bauer,* 291 B.R. 127, 130 (Bankr. D. Minn. 2003), *aff'd,* 298 B.R. 353 (B.A.P. 8th Cir. 2003).

2.26 Through four days of testimony and over 120 exhibits, including four Schedule amendments, CYR has shown not only disregard for the required transparency of the bankruptcy process but worse, a complete disregard for candor to any court[43].

**WHEREFORE, PREMISES CONSIDERED** Key Equipment Finance, a division of KeyBank National Association prays that this Court deny the Debtor's claims to the exemptions as provided herein, grant the additional relief set forth above, and for such other and further relief to which Key Equipment Finance, a division of KeyBank National Association may be justly entitled.

Dated this 1st day of April, 2019.

---

[43] See Exhibits 108 -117 and 124

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*     Page **15** of **17**

        Respectfully submitted,

        Luttrell + Carmody Law Group
        One International Centre
        100 N.E. Loop 410, Suite 615
        San Antonio, Texas 78216
        Tel.  210.426.3600
        Fax  210.426.3610
        luttrell@lclawgroup.net
        meheard@lclawgroup.net

        By: /s/ Leslie M. Luttrell
            Leslie M. Luttrell
            State Bar No. 12708650
            Mary Elizabeth Heard
            State Bar No. 24096727

        **ATTORNEYS FOR KEY EQUIPMENT FINANCE, A DIVISION OF KEYBANK NATIONAL ASSOCIATION**

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its
Amended Objections to Debtor's Claims of Exemption*    Page **16** of **17**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served on the following, either by ECF electronic service or by Regular U.S. Mail on the 1st day of April, 2019:

***Debtor***
Steven Jeffrey Cyr
15 Esquire
San Antonio , TX 78257

***Debtor's Counsel***
Ronald J. Johnson
111 Soledad, Suite 1 350
San Antonio, TX 78205

***Trustee***
Jose C Rodriguez
342 W Woodlawn, Suite 103
San Antonio, TX 78212

***Trustee's Counsel***
Patrick H. Autry
Branscomb, PC
7110 Navarro, Suite 500
San Antonio, TX 78205

***Parties Filing Notice of Appearance***

Bexar County
c/o Don Stecker
Linebarger Goggan Blair
711 Navarro Street, Ste 300
San Antonio, TX 78205

Broadway National Bank
c/o James A. Hoffman
Clemens & Spencer
112 East Pecan Street, Suite 1300
San Antonio, Texas 78205

Firstmark Credit Union
c/o Syl Mauro
12451 Starcrest Drive
San Antonio, TX 78216

SNH NS MTG Properties 2 Trust
c/o James J. Watts and
Timothy P. Ribelin
Husch Blackwell LLP
111 Congress Ave., Ste. 1400
Austin, Texas 78701

Leanne Mary Cyr, Trustee Bergerund
Trust c/o Peter J. Stanton
Law Offices of Peter J. Stanton
111 Soledad, Suite 1350
San Antonio, Texas 78205

Richard W. Ward
6860 N. Dallas Pkwy., Ste. 200
Plano, TX 75024

Paul T. Curl
Curl Stahl Geis
A Professional Corporation
700 North St. Mary's Street, Suite 1800
San Antonio, TX 78205

Eric C. Taube
Mark C. Taylor
Waller Lansden Dortch & Davis, LLP
100 Congress Ave., Ste. 1800
Austin, Texas 78701

/s/ Leslie M. Luttrell
Leslie M. Luttrell

---

Case No. 18-50102-cag
*Closing Argument of Key Equipment Finance in Support of its*
*Amended Objections to Debtor's Claims of Exemption* Page **17** of **17**